Arthur A. Hartinger (SBN: 121521)
ahartinger@meyersnave.com
Geoffrey Spellberg (SBN: 121079)
gspellberg@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, California 94607
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Karen Snell (SBN 100266)
ksnell@snell-law.com
102 Buena Vista Terrace
San Francisco, CA 94117
Telephone: (415) 487-1127
Facsimile: (415) 487-0748

Attorneys for Claimant
ANA CHRETIEN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>REAL PROPERTY AND IMPROVEMENTS LOCATED AT 1840 EMBARCADERO, OAKLAND, CALIFORNIA,<br><br>Defendant. | Case No. CV 12 3567 MEJ<br>Related Case: CV 12 3566 MEJ<br><br>**NOTICE OF MOTION, MOTION, AND POINTS AND AUTHORITIES FOR ORDER PROHIBITING UNLAWFUL USE OF DEFENDANT PROPERTY**<br><br>Hearing Date: December 13, 2012<br>Time: 10:00 a.m.<br>Courtroom: No. B – 15th Floor<br><br>Trial Date:       None Set |

TO THE HONORABLE MARIA ELENA JAMES AND TO ALL PARTIES HEREIN, AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 13, 2012 at 10:00 a.m. in Courtroom No. B of the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, Claimant Ana Chretien, pursuant to Civil L.R. 7-1, and Rule G of the Supplemental Rules of the Federal Rules of Civil Procedure, hereby moves the Court for an

Order prohibiting Claimant Patients Mutual Assistance Collective Corporation, dba Harborside Health Center ("Harborside"), from cultivating, possessing with intent to distribute and/or distributing marijuana in any form at defendant property, 1840 Embarcadero, Oakland, California.

This motion is made on the ground that 21 U.S.C. §§882 and subdivision 7 of Rule G of the Supplemental Rules of the Federal Rules of Civil Procedure authorize the Court on motion to enter any order necessary to prevent the use of defendant property in any potential criminal offense. Despite demand by Ana Chretien that Harborside cease sales of marijuana from defendant property, Harborside continues to operate a medical marijuana dispensary and engage in retail sales of marijuana at defendant property in apparent violation of 21 U.S.C. §841(a), as alleged by the United States Government. Good cause therefore exists for the Court to enter an order under Supplemental Rule G prohibiting Harborside from using defendant property to engage in such potential criminal activity.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  FACTUAL BACKGROUND

Ana Chretien is the owner of defendant real property, 1840 Embarcadero, Oakland, California (the "Property"). Ms. Chretien has leased approximately 42% of the total square footage of rentable space at the Property (the "Leased Premises) to Harborside. (Declaration of Ana Chretien.("Chretien Decl."), filed herewith.)

On or about January 21, 2006 Ana Chretien as landlord, entered into a lease for the Property (the "Lease") with the tenant Harborside. Chretien Decl., ¶ 3. At the time the Lease was executed, Ms. Chretien was aware that Harborside intended to use the Leased Premises as a medical cannabis dispensary and that Harborside had obtained all requisite permits from the City of Oakland to operate that business. *Id.,*¶ 5. At the time that the lease was executed, Ms. Chretien understood that the business operations of Harborside were consistent with all controlling legal statutes and authorities. *Ibid.*

The Lease term was five years with options to re-new. At the conclusion of that five year term, the parties entered into a Lease Amendment. *Id.,* ¶ 4. By the terms of that amendment, executed on or about January 22, 2011, the parties agreed to extend the term of the original lease

for an additional five years. Chretien Decl., at Ex. B.

At the time of the original Lease and the execution of the Lease Amendment, Ana Chretien understood that Harborside was permitted to lawfully operate a medical cannabis dispensary in the State of California. *Id.*, ¶ 5. This belief was reinforced by the fact that the Lease provides at Sections 15 and 16 that Harborside will comply with all laws affecting its use of the property including not using the Leased Premises "for any unlawful purposes, including, but not limited to, using, manufacturing, selling, storing or transporting illicit drugs or other contraband, or violate any law or ordinance…." Chretien Decl. at ex. A. Further, Ms. Chretien never received any notification from any governmental agency that the conduct of Harborside was potentially illegal until this forfeiture action was initiated by the Government. *Id., at* ¶ 6.

On or about July 12, 2012, Ana Chretien received notice that the United States Attorney's Office had filed a Complaint for Forfeiture against the Property, seeking forfeiture of the Property under 21 U.S.C. §881(a)(7) on the basis that the Property is being used in a manner which violates the Controlled Substances Act. *Id.*, ¶ 7.

After attempting to convince Harborside to voluntarily stop dispensing marijuana from the Property, on or about August 3, 2012 Chretien served upon Harborside a 3 Day Notice to Cure or Quit, demanding that defendant immediately cease all alleged unlawful activity at the Premises, including the sale of medical cannabis. *Id.*, ¶ 9. Since that time, Ana Chretien has had ongoing discussions with Harborside in an attempt to agree on a date by which Harborside would vacate the Property. The parties have been unable to reach such an agreement and Harborside has also refused to cease cannabis sales at the Property. Therefore, on August 14, 2012, Ana Chretien filed an unlawful detainer action in the Superior Court of the State of California, County of Alameda. *Id.,* ¶ 9.

Since learning that the Government asserts that Harborside's activity at the Property violates federal law, Ana Chretien has committed to taking all reasonable measures to cause Harborside to cease such alleged illegal activity at the Property. Since Harborside will not voluntarily cease the conduct and is actively opposing Chretien's efforts to evict Harborside, Ms. Chretien is filing this motion in an attempt to obtain a court order prohibiting the use of the

Property for the cultivation, possession with intent to distribute, and/or distribution of marijuana in any form.

## II. ARGUMENT

### A. The Court is Authorized to Enjoin Criminal Use of the Property Pending the Outcome of This Case.

Congress has specifically authorized district courts to enjoin violations of the Controlled Substances Act (21 U.S.C. §§801 et seq., the "CSA"). Section 882 of the CSA provides in part: "The district courts of the United States and all courts exercising general jurisdiction in the territories and possessions of the United States shall have jurisdiction in proceedings in accordance with the Federal Rules of Civil Procedure to enjoin violations of this subchapter."

Rule G of the Supplemental Rules of the Federal Rules of Civil Procedure governs forfeiture actions in rem arising from a federal statute. Subdivision (7)(a) of Rule G, entitled: "Preserving and Preventing Criminal Use of Property," provides:

> *"When the government does not have actual possession of the defendant property the court, on motion or on its own, may enter any order necessary to preserve the property, to prevent its removal or encumbrance, or to prevent its use in a criminal offense."*

Notably, the section does not specify or limit who can bring such a motion. The language is intentionally broad and permits the Court, upon motion by anyone, to enter an order permitting the use of the property in a criminal offense.

### B. An Injunction is Warranted to Prevent Further Use of the Property to Possess And Distribute Marijuana in Violation of Federal Law

Claimant Chretien has not located any reported cases which involve the grant or denial of injunctive relief under Supplemental Rule G in a forfeiture action. Some guidance regarding injunctions issued pursuant to section 882 of the CSA may be found, however, in the United States Supreme Court's decision in *U.S. v Oakland Cannabis Buyer's Co-op*, 532 U.S. 483 (2001). The *Oakland Cannabis Buyer's Co-op* case makes it clear that this court does not have discretion to

deny injunctive relief on the basis of the medical needs of Harborside's patients or any other public policy consideration related to medicinal use of cannabis. Moreover, that case suggests that this Court may only deny injunctive relief if there is a preferable mechanism for enforcing the underlying statute. Here, injunctive relief is warranted because it is specifically authorized under Rule G and is the most expedient and efficient means of preventing use of the Property in what is an apparent criminal offense.

In *U.S. v Oakland Cannabis Buyer's Co-op*, the United States sued a medical cannabis cooperative to enjoin distribution of marijuana by the cooperative. The United States sought a preliminary injunction under section 882 of the CSA, arguing that the cooperative's activities violated the CSA's prohibitions on distributing, manufacturing, and possessing with intent to distribute or manufacture a controlled substance. The District Court enjoined the cooperative's activities, but the cooperative continued to distribute marijuana. The District Court then found the cooperative in contempt and rejected the cooperative's motion to modify the injunction to permit "medically necessary" distributions.

The cooperative appealed and the Ninth Circuit reversed and remanded the ruling on the motion to modify the injunction, instructing the District Court to consider criteria for a "medical necessity" exception to the CSA's prohibitions. *U.S. v Oakland Cannabis Buyer's Co-op*, 532 U.S. 483 at 486-488. According to the Ninth Circuit, the District Court retained *"broad equitable discretion"* to fashion injunctive relief and the district court could have, and should have, weighed the public interest and considered such factors as the serious harm in depriving patients of marijuana. *Id.* at 532 U.S. 483 at 488. After the district court modified the injunction to incorporate a medical necessity defense, the United States petitioned for writ of certiorari. That Petition was granted. *Id.* at 486-489.

The U.S. Supreme Court held that no medical necessity exception exists to the CSA's prohibitions on manufacture and distribution of marijuana. The Court also rejected the cooperative's alternate argument that the District Court had *"broad equitable discretion"* to tailor the injunctive relief to account for medical necessity, irrespective of whether there is a legal defense of necessity in the statute. *Id.* at 495. Acknowledging that the District Court had

discretion whether or not to issue an injunction, the U.S. Supreme Court held that this discretion did not allow the District Court to consider evidence relating to medical necessity – namely, the cooperative's patients' need for cannabis and the harm they might suffer if denied access to it. *Id.* at 497. The Court explained:

> *A district court cannot, for example, override Congress' policy choice, articulated in a statue, as to what behavior should be prohibited. "Once Congress, exercising its delegated powers, has decided the order of priorities in a given area, it is …for the courts to enforce them when enforcement is sought." [citation]. Courts of equity cannot, in their discretion, reject the balance that Congress has struck in a statute. [citation]. Their choice (unless there is statutory language to the contrary) is simply whether a particular means of enforcing the statute should be chosen over another permissible means; their choice is not whether enforcement is preferable to no enforcement at all. Consequently, when a court of equity exercises its discretion, it may not consider the advantages and disadvantages of non-enforcement of the statute, but only the advantage and disadvantages of "employing the extraordinary remedy of injunction," [citation] over the other available methods of enforcement. [citation]. To the extent the district court considers the public interest and the conveniences of the parties, the court is limited to evaluating how such interest and conveniences are affected by the selection of an injunction over other enforcement mechanisms.*

*Id.,* at 497-98.

To illustrate the foregoing principle, the Court cited cases in which district courts had declined to enjoin various statutory violations because there existed other, more appropriate means of ensuring compliance. *Id.,* at 498, fn. 9. *Hecht Co. v Bowles*, 321 U.S. 321 (1944), for example, held that the District Court was not required to issue an injunction to restrain violations of the Emergency Price Control Act of 1942 and regulations thereunder when "some 'other order' might be more appropriate, or at least so appear to the court." Id., at 328, (quoting statutory provision that enabled district court to issue an injunction, a restraining order, "or other order"). *Weinberger v. Romero – Barceló*, 456 U.S. 305 (1982), held that a district court had discretion to issue an injunction precluding the United States Navy from releasing ordinance into water, but the Court could rely on other means of ensuring compliance, including ordering the Navy to obtain a permit. Id., at 314-318. See also *Amoco Production Co. v Gambol*, 480 U.S. 531, 544-546 (1987) (holding that a district court did not err in declining to issue an injunction to bar exploratory drilling on Alaskan public lands, because the District Court's decision "did not undermine" the policy of the Alaska National Interest Lands Conservation Act, 16 U.S.C. §3120, and because the Secretary of the Interior had other means of meaningfully complying with the statute).

Here, as was the case in *Oakland Cannabis Buyer's Co-op, supra,* criminal enforcement of the CSA is certainly, an alternative means of ensuring compliance with the statute. However, this motion does not seek to enjoin all activities of Harborside that may violate the CSA. This motion seeks limited injunctive relief prohibiting *the use of defendant property (1840 Embarcadero, Oakland) to violate the CSA.* Injunctive relief for such a purpose is not only authorized generally in section 882 of the CSA, it is specifically provided for in Supplemental Rule G. It serves the limited purpose of expeditiously ceasing unlawful activity at real property subject to the Court's jurisdiction in a forfeiture action. And this request is narrowly drawn. Harborside would still be permitted to conduct its business—but only precluded from doing so from the Property. Under these circumstances, an injunction issued after notice and an opportunity to be heard is a proceeding narrow in scope, less burdensome on the courts and law enforcement agencies and should, therefore, be preferable to the institution of a separate criminal proceeding.

Finally, Ana Chretien does not have the option of instituting criminal proceedings against

Harborside. This motion is Ana Chretien's only means of halting potential violations of the CSA at her Property pending the outcome in the unlawful detainer action, which could take months to conclude. This is a case where the court should exercise its discretion to issue an injunction as the preferable means of halting these potential CSA violations from occurring at the Property.

### C. Ms. Chretien Has Standing to Seek This Relief

A party seeking an injunction must establish standing to do so. To seek injunctive relief, the moving party must establish that it is facing an "injury in fact" that is concrete and particularized, actual and imminent and is not conjectural or hypothetical. More importantly, the moving party must show that the injury in fact is traceable to the challenged action of the opposing party and that a favorable ruling on the motion will prevent or redress that imminent injury in fact. See *Summers v. Earth Island Institute* 555 U.S. 488, 493 (2009); *Fisher v. University of Texas* 631 F.3d 213, 217 (5th Cir.2011).

As noted above, Rule G (7) does not limit who is entitled to seek the relief from the Court prohibiting the property from being used in a criminal offense. Ms. Chretien, as the property owner clearly has standing under that standard. She owns the property and is facing possible forfeiture of her property due to the very activities that she is asking this Court to restrain. This harm certainly qualifies as an "injury in fact," and it is imminent and concrete and flows unquestionably from Harborside's operation of a medical marijuana dispensary on Ms. Chretien's property. Ms. Chretien's sworn declaration establishes her standing to bring this motion.

### D. Ms. Chretien's Evidence Meets the Standard for Issuance of the Injunction

Rule G(7) does not discuss the standard that must be shown before the Court will issue an order preventing the use of the property in a criminal offense. Presumably, the Court need only find that a preponderance of the evidence establishes the offending conduct and then the Court is permitted to restrain the conduct.

The relief that Ms. Chretien seeks here is injunctive relief and so Harborside undoubtedly will argue that she must meet the applicable injunctive relief standard. Although she disagrees with that argument (asserting that the Court need only find that a preponderance of evidence supports the request for relief), Ms. Chretien has established the requisite elements for injunctive relief.

NOTICE OF MOTION, MOTION, AND POINTS AND AUTHORITIES FOR ORDER PROHIBITING UNLAWFUL USE OF DEFENDANT PROPERTY

On a motion seeking injunctive relief, the moving party must show the possibility of irreparable injury and that legal remedies (i.e., money damages) are inadequate. See *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *Stanley v. University of So.Cal.* 13 F.3d 1313, 1320 (9th Cir.1994). The traditional four part test on a preliminary injunction requires the moving party to show 1) the likelihood of success on the merits, 2) the likelihood of suffering irreparable harm if the preliminary relief is not granted, 3) the balance of equities favors the moving party and 4) the preliminary relief favors the public interest. See *Winters v. Natural Resources Defense Council, Inc.* 555 U.S. 7, 20 (2008).

Here, Ms. Chretien's Declaration and the underlying facts show that she has met the required standards for issuance of the requested injunctive relief to halt sales and distribution of cannabis from the Leased Premises. It is undisputed that Harborside is operating a cannabis dispensary on the property and, with the U.S. Attorney seeking to seize the property because cannabis is sold and distributed there, Ms. Chretien clearly establishes likelihood of success in bringing her argument that the Property is being used for an apparent criminal offense.

The irreparable harm that Ms. Chretien faces is profound. As the Court file shows, the federal government is actively seeking forfeiture of Ms. Chretien's primary asset, the real property located at 1840 Embarcadero, Oakland. Ms. Chretien uses this location to operate her primary business which is providing security services through her company, ABC Security, Inc. It is axiomatic that every piece of real property is unique and so if the Government successfully obtains a forfeiture, the harm to Ms. Chretien is irreparable. Legal remedies (i.e. money damages) cannot make her whole. *Weinberger v. Romero-Barcelo, supra.* See Chretien Decl. at ¶s 10-12.

Given the potential loss of her property, the balance of hardships clearly favors granting this motion. Harborside's downside is only the inability to operate its business from this property while the matter is pending. Even if Harborside can show financial detriment, the loss of business revenue is unquestionably compensable through legal damages. And finally, in light of the Government's assertion that Harborside is violating 21 U.S.C. § 841(a), the public interest in halting the alleged sale of controlled substances is compelling.

To the extent that Rule G(7) so requires, Ms. Chretien has met all the elements here that

entitle her to issuance of the requested injunctive relief.

## III. CONCLUSION

Based on the foregoing, Ana Chretien respectfully requests that the Court enter an order prohibiting Harborside and its principals, affiliates, agents, subsidiaries and employees from using the Leased Premises in whole or in part, for the purpose of the cultivation, possession with intent to distribute, and/or distribution of marijuana.

DATED: November 7, 2012           MEYERS, NAVE, RIBACK, SILVER & WILSON

By: _____
Geoffrey Spellberg
Attorneys for Claimant Ana Chretien

1977277.1

NOTICE OF MOTION, MOTION, AND POINTS AND AUTHORITIES FOR ORDER PROHIBITING UNLAWFUL USE OF DEFENDANT PROPERTY